## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK PRAGUE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>SUPREME GOLF, INC.,<br><br>                  Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Patrick Prague ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Supreme Golf, Inc. ("Defendant" or "Supreme Golf"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      For over two years, Defendant has been nickel and diming users of its platform booking tee times to golf courses in New York in violation of the New York Arts and Cultural Affairs Law § 25.07(4). Defendant Supreme Golf operates the website, https://www.supremegolf.com, and a mobile application, that allows golfers to book tee times at golf courses across the United States, including in New York.

2.      The purchase flow remains substantially the same across all golf courses where users of Supreme Golf can book tee times. Whenever a consumer selects a tee time to book through Supreme Golf, he is quoted a fee-less price, only to be ambushed by non-delineated "booking fee" at checkout, after clicking through the various screens required to book a tee time. Some consumers that pay the fee may never notice it. Others, who do notice the fee, are surprised and frustrated, but nevertheless pay because they are unwilling to start the entire

process all over again on another website.  This cheap trick—commonly referred to as "drip pricing"[1]—has enabled Defendant to swindle substantial sums of money from its customers.

3.  Behavioral economists largely agree that drip pricing harms consumers and causes them to overpay by exploiting people's drive to complete a commenced purchased.[2] After a seller has introduced surprise fees on the final screen, assuming the consumer even notices the fees, the consumer will still be reticent to leave due to a sense they will incur a loss by abandoning the transaction. To stop this hustle, many states, including New York, have passed laws requiring "all in pricing," which means websites must only display the total cost of tickets and bookings, inclusive of all mandatory and ancillary fees.

4.  New York Arts and Cultural Affairs Law § 25.07(4) provides that "every operator or every operator's agent of a place of entertainment … or platform that facilitates the sale or resale of tickets … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket."  "Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase."  Id. (emphasis added).  And "[t]he price of the ticket shall not increase during the purchase process."  Id.

5.  For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other users of Supreme Golf who booked tee times at golf courses in the state of New York, for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affairs Law § 25.33.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.  Defendant sold at least 100,000

---

[1] Mary W. Sullivan, Fed. Trade Comm'n, Econ. *Analysis of Hotel Resort Fees* (2017), https://www.ftc.gov/reports/economic-analysis-hotel-resort-fees.
[2] Steffen Huck & Brian Wallace, *The impact of price frames on consumer decision making: Experimental evidence*, at 1-3 (Oct. 15, 2015).

bookings to golf courses through its website during the applicable class period, and is liable for a minimum of fifty dollars in statutory damages for each ticket sold.

7.      This Court has personal jurisdiction over Defendant because Defendant engages in business relations with golf courses in this District and operates a website and mobile application that sells bookings to golf courses in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff Prague purchased a booking through Defendant in this District and Plaintiff Prague resides in this District.

## PARTIES

9.      Plaintiff Patrick Prague is an individual consumer who, at all times material hereto, was a citizen and resident of Suffolk County, New York.  Plaintiff used Supreme Golf on multiple occasions to book tee times at golf courses in New York, including to book a 5:00 PM tee time on August 7, 2024 at Willow Creek Golf & Country Club in Mount Sinai, New York. Plaintiff Prague paid a booking fee to Defendant each time he used Supreme Golf. The transaction flow process he viewed was substantially similar to that depicted in Figures 1 through 6 of this Complaint.

10.     Defendant Supreme Golf, Inc. is a Delaware corporation with its headquarters in 190 Civic Circle, Suite 210, Lewisville, Texas.

## RELEVANT FACTUAL ALLEGATIONS

11.     When a person visits the website, https://supremegolf.com/, on the main page, he can either type in his location, input his desired date, and click the orange "Search" button or click "Near me" to search for available tee times in specific areas.   *See* Figure 1, next page.



**Figure 1**

12.　　After a consumer selects the "Search" button, he is taken to a screen which provides a list of various golf courses with admission dates, times, and prices.  *See* Figure 2, next page.  The "total cost" of any ticket, inclusive of fees, is not shown on this screen, in violation of New York Arts & Cultural Affairs Law § 25.07(4).  *Id.*　　A tee time at the Willow Creek Golf & Country Club for January 17, 2025 is initially quoted at "$44.99-$61.99."  *Id.*



**Figure 2**

13.     After a consumer clicks on the golf course he wishes to book at, various tee times are offered re-displaying the prices within the original range, including the "$44.99" price for a 12:00 PM tee time at the Willow Creek Golf & Country Club, again failing to disclose ancillary fees.  *See* Figure 3, next page.



**Figure 3**

14.     After a consumer clicks the desired tee time, the website flashes a screen that says "Confirming your tee time rate."  *See* Figure 4, below.  However, Supreme Golf is not actually confirming the tee time rate, but is in fact increasing it by adding a booking fee.



**Figure 4**

15.     Once the next screen loads, the price of "$44.99" for two players is displayed to the consumer as "$89.98."  However, in tiny, barely legible font below the price, Supreme Golf sneaks in the fact that a $6.98 booking fee will be added.  *See* Figure 5, below.



**Figure 5**

16.     After the consumer clicks the displayed price, the user is brought to a final checkout screen, which requires the user to input his payment information.  *See* Figure 6, next page.  On the right-side of the same screen, the "Total" ticket price is displayed, which, for a tee time of 12:00 PM on January 17, 2025, includes an additional $6.98 "Booking Fee."  *Id.*  This is the first time the screen makes clear mention of the "Booking Fee" and the first time the total cost of the booking is displayed to the consumer.



**Figure 6**

**NEW YORK ARTS & CULTURAL AFFAIRS LAW**

17.      Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law §

25.07(4), which provides that "[e]very operator or operator's agent of a place of entertainment…

or platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket,

inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a

clear and conspicuous manner the portion of the ticket price stated in dollars that represents a

service charge, or any other fee or surcharge to the purchaser.  Such disclosure of the total cost

and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase."

*Id*. (emphasis added).  And "[t]he price of the ticket shall not increase during the purchase

process."  *Id.*; *Compare with* Figures 2 through 6.

8

18.     Shortly after the law was enacted, ticketing websites peppered the State of New York's Division of Licensing Services with questions about the scope of the law.  As explained by the Division of Licensing Services, "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices."  *See* N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461*, attached hereto as **Exhibit A**, at 1.  "From the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself."  *Id.*  "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser."  *Id.* at 2 (emphasis added).  "In short, the ticket listing must include the total cost of the ticket, with a breakdown of all service charges, fees and surcharges, that the purchaser must pay just to purchase the ticket."  *Id.* (emphasis added).

## CLASS ACTION ALLEGATIONS

19.     **Nationwide Class:**  Plaintiff seeks to represent a class defined as all individuals in the United States who used Supreme Golf to book tee times at golf courses located in New York on or after August 29, 2022.  Excluded from the New York Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

20.     **New York Subclass:**  Plaintiff seeks to represent a class defined as all individuals in New York who used Supreme Golf to book tee times at golf courses located in New York on or after August 29, 2022.  Excluded from the New York Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

21.     Members of the Nationwide Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and New York Subclass are at least in the tens of thousands.  The precise number of Nationwide Class and New York Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and New York Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

22.     Common questions of law and fact exist as to all Nationwide Class and New York Subclass members and predominate over questions affecting only individual Nationwide Class and New York Subclass members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of tickets, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4); and (b) whether the displayed price of Defendant's tickets increases during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4).

23.     The claims of the named Plaintiff are typical of the claims of the Nationwide Class and New York Subclass in that the named Plaintiff and the Nationwide Class and New York Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's ancillary booking fees, throughout the online ticket purchase process.

24.     Plaintiff is an adequate representative of the Nationwide Class and New York Subclass because his interests do not conflict with the interests of the Nationwide Class and New York Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of

Nationwide Class and New York Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

25.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and New York Subclass members.  Each individual Nationwide Class and New York Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### New York Arts & Cultural Affairs Law § 25.07
### (On Behalf Of The Nationwide Class and New York Subclass)

26.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

27.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

28.    Defendant is an "operator's agent of a place of entertainment" because Defendant works on the behest of operators of places of entertainment, including the golf courses in New York that Supreme Golf offers tee time bookings for.

29.     In the alternative, Defendant is a "Platform that facilitates the sale or resale of tickets" because Defendant provides the websites through which consumers to golf courses may book tee times, as shown in the examples in the complaint.

30.     A golf course is a "place of entertainment." "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged." N.Y. Arts & Cult. Aff. Law § 25.03(6) (emphasis added).

31.     Because golf courses are places of entertainment, tee times to those courses are tickets to places of entertainment. "'Ticket' means any evidence of the right of entry to any place of entertainment." N.Y. Arts & Cult. Aff. Law § 25.03(9). A tee time is evidence of the right of entry to a golf course. Put another way, without a tee time, a visitor has no right to enter a golf course.

32.     Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" after a ticket is selected, as depicted in Figures 2 through 6 of this Complaint.

33.     Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the total cost of its tickets during the purchase process, as depicted in Figures 2 through 6 of this Complaint.

34.     On or about August 9, 2024, Plaintiff booked a 5:00 PM tee time through Supreme Golf for Willow Creek Golf & Country Club in Mount Sinai, New York and was forced to pay ancillary fees to Defendant. The fees were displayed as a "Booking fee."

35.     Plaintiff was harmed by paying these unlawfully applied fees. These fees were also themselves rendered unlawful because the total cost was not disclosed to Plaintiff at the beginning of the purchase process, in violation of New York Arts & Cultural Affairs Law § 25.07(4).

36.    At the time Plaintiff made his booking, he was not aware that Defendant's booking fee was unlawful under the New York Arts & Cultural Affairs Law.  He was not a "website tester" browsing websites in search of legal violations.  Plaintiff was instead browsing the websites because he sincerely intended to book a tee time at a golf course, and he did, in fact, purchase tickets for the tee time.

37.    On behalf of himself and members of the Nationwide and New York Subclass, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees.  *See* N.Y. Arts & Cult. Aff. Law § 25.33.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and New York Subclass prays for judgment as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees

and expenses and costs of suit.

Dated: January 17, 2025                      **BURSOR & FISHER, P.A**.

By: ____*/s/ Philip L. Fraietta*____
          Philip L. Fraietta

Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*